UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

NOLAN TURNER,
a.k.a. NOLAN TURNER, IV

CRIMINAL ACTION

NO. 15-70-JJB-RLB

### RULING ON MOTION TO SUPPRESS AND MOTION TO QUASH

This matter is before the Court on a Motion to Suppress Evidence (Doc. 18) and a Motion to Quash (Doc. 19) filed by the defendant, Nolan Turner ("Turner"). The United States of America (the "Government") filed oppositions to both motions (Docs. 22 & 21). This Court ordered an evidentiary hearing, which was held on November 30, 2015 ("Suppression Hearing"). After the hearing, both the Government and the defendant submitted post-hearing briefs (Docs. 40 & 42). For the reasons stated herein, the defendant's Motion to Suppress Evidence (Doc. 18) is **DENIED in part and GRANTED in part**, and the defendant's Motion to Quash (Doc. 19) is **DENIED**.

I.   BACKGROUND

Late one evening in December 2014, Baton Rouge Police Department Officers Nicholas Collins ("Officer Collins") and Ronald Norman ("Officer Norman") were patrolling in a high-crime area in which there had been numerous shootings, robberies, and narcotics incidents. The officers observed Turner wearing a hooded jacket and walking near a closed building on Prescott Road. One of the officers observed what appeared to be a firearm in Turner's jacket pocket.[1]

---

[1] The officers' testimony conflicts as to whether it was apparent that Turner was carrying a firearm. Officer Collins, who has attended a training class that taught him how to identify concealed firearms, observed that the right side of Turner's jacket was "very much lower than the left side . . . there was a heavy bulge" consistent with the presence of a firearm. *Suppression Hr'g Tr.* 6:13–7:10, 9:5–10, Doc. 35. However, Officer Norman testified that he did not observe a gun prior to approaching Turner, nor did Officer Collins tell him that he believed that Turner had a gun while they were in the car together. *Id.* at 57:17–60:22. Officer Norman had no prior training on identifying concealed weapons. *Id.* at 54:1–8.

1

The officers decided to stop Turner to investigate further.[2] As the officers turned their unmarked police vehicle towards Turner, he reversed course and began walking in the opposite direction. Officer Norman opened his door and said "Hey, come here" to Turner, but Turner kept walking away. At this point, the officers exited their vehicle and both shouted "Police, Stop, Police, Stop." *Suppression Hr'g Tr.* 13:2–3, 41:3–5, Doc. 35. Turner responded by engaging in headlong flight.[3] *Id.*

During the pursuit, Officer Collins observed Turner reach into his jacket pocket and throw a dark object underneath a nearby residence. Soon thereafter, Turner surrendered to the officers. The officers informed Turner of his *Miranda* rights and temporarily detained him while they continued to investigate.

The officers returned to the area where Officer Collins observed Turner discarding the dark object, where they retrieved a Glock 26, .9 mm semi-automatic pistol and an extra magazine from underneath the residence. Upon further investigation, the officers discovered that the firearm had been reported stolen and that Turner was a convicted felon. During subsequent questioning, Turner

---

[2] The officers cited different reasons as their basis for reasonable suspicion for initially stopping Turner. Officer Collins testified that he believed that criminal activity may be afoot because Turner had his hood on, appeared to be carrying a firearm-like object in his jacket, was walking close to the building as if he did not want to be observed, and made a U-turn upon seeing the officers approaching. *Suppression Hr'g Tr.* 12:6–11, 27:2–9, Doc. 35. Meanwhile, Officer Norman testified that at the time that he and Officer Collins attempted to make contact with Turner, the only suspicious activity that he observed was Turner walking alongside the closed building. *Id.* at 48:21–49:2. Furthermore, Officer Norman testified that he was not aware of the firearm at the time Turner began to run away. *Id.* at 53:13–20.

[3] The officers offered conflicting testimony about the events leading up to Turner's flight. Officer Collins testified that after deciding to make contact with Turner, the officers turned their unmarked police vehicle into the parking lot where Turner was walking. *Suppression Hr'g Tr.* 11:7–18, Doc. 35. Upon noticing the vehicle turn towards him, Turner reversed course and began to walk in the opposite direction of the officers' vehicle. *Id.* at 10:21–10:25. According to Officer Collins, Turner began running away from the officers after Officer Norman activated the blue emergency lights. *Id.* at 12:19–24. On the other hand, Officer Norman testified that he turned the police vehicle around after observing Turner walking near the building and, at that point, Turner began to walk in the opposite direction. *Id.* at 39:8–11. Officer Norman testified that he never maneuvered the vehicle into the parking lot, but instead parked the car in a turning lane in the street. *Id.* at 48:5–9. According to Officer Norman, at this point he opened his door and said "Hey, come here" to Turner, to which Turner did not respond. *Id.* at 48:13–14. Officer Norman then stepped out of his vehicle wearing a tactical vest that had "Police" written on the front of it, and Turner began to run. *Id.* at 40:22–23, 48:5–6. Officer Norman stated that he did not activate the vehicle's blue emergency lights during the incident. *Id.* at 49:9–15.

admitted to possessing the firearm. Turner was subsequently charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

In the present motions, Turner argues that any physical evidence (i.e. the recovered firearm) and statements resulting from this incident should be suppressed because the officers violated his Fourth Amendment rights when they pursued and seized him without reasonable suspicion or probable cause. *Def.'s Mot. Suppress* 1, Doc. 18. The Government argues that the officers had reasonable suspicion to pursue Turner and that the defendant lacks standing to contest the seizure of the firearm because he voluntarily abandoned it. *Gov't's Opp'n* 4, Doc. 40. Additionally, Turner argues that the Grand Jury indictment charging him with possession of a firearm by a convicted felon should be quashed because the underlying felony offense, Possession of Marijuana-Second Offense, was legislatively amended from a felony to a misdemeanor after Turner's conviction of that offense. *Def.'s Mot. Quash* 2, Doc. 19.

## II.     MOTION TO SUPPRESS (DOC. 18)

### A.     Timing of Seizure

Turner contends that the officers pursued him without reasonable suspicion, as required by *Terry v. Ohio*, 392 U.S. 1, 30 (1968), and therefore violated his Fourth Amendment right to be free from unreasonable search and seizure. *Def.'s Mot. Suppress* 1, Doc. 18. Specifically, Turner contends that he was "seized" within the meaning of the Fourth Amendment at the time he was ordered to stop. *Def.'s Supp. Mem.* 5, Doc. 42. Meanwhile, the Government contends that Turner was not "seized" until he was taken into custody by the officers. *Gov't's Opp'n* 4–5, Doc. 40.

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." Under the Fourth Amendment, a "seizure" *of a person* occurs only when there is either some application of physical force, or a show of authority to which the subject

3

yields; a show of authority, without any application of physical force, to which the subject does not yield is not a "seizure." *Cal. v. Hodari D.*, 499 U.S. 621, 625–26 (1991). In *Hodari D.*, officers were patrolling in an unmarked police vehicle when they saw several youths huddled around a car parked at the curb. 499 U.S. at 622–23. When the youths saw the police vehicle, they took flight. *Id.* at 623. Officers gave chase and observed the suspect toss away what appeared to be a small rock. *Id.* A moment later, the officer tackled the suspect, handcuffed him, and discovered the rock that was discarded was crack cocaine. *Id.* The Court found that the fleeing suspect, pursued on foot by police, was not "seized" until he was physically tackled by an officer. *Id.* at 626. Thus, the Court held that the cocaine dropped by Hodari while he was running from police was not the fruit of his subsequent seizure. *Id.* at 629.

In the instant case, Turner was not "seized" within the meaning of the Fourth Amendment until he yielded to Officers Collins and Norman. Like *Hodari D.*, there was no physical application of force prior to Turner being placed in handcuffs. Instead, after officers gave Turner a show of authority by yelling "Police, Stop, Police, Stop." Turner responded by engaging in flight. *Suppression Hr'g Tr.* 13:2–3, 41:3–5. After Turner discarded an object from his jacket pocket, he yielded to the officers and was handcuffed. Accordingly, under *Hodari D.*, Turner was not seized until he yielded to the officers, which occurred after he had discarded the firearm. Because Turner had not yet been "seized" when he discarded the firearm, the firearm could not have been recovered as a fruit of a seizure. Therefore, the Fourth Amendment was not violated as to the recovery of the firearm, and the Motion to Suppress is **DENIED** as it pertains to the firearm.

B.     **Constitutionality of the Seizure**

While the defendant's relinquishment of the firearm prior to his seizure adequately addresses the defendant's motion to exclude the physical evidence (i.e. the firearm) recovered on the night in question, the Court must still determine whether Turner's statements to the officers after he was seized were the result of an unlawful seizure. Accordingly, the Court must determine whether the officers had lawful authority to seize Turner under *Terry*.

Under the Fourth Amendment, an officer may conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968).[4] The officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *Id.* at 27. An individual has the right to "ignore the police and go about his business" when the individual is approached by an officer who lacks the requisite reasonable suspicion to justify the stop. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) (citing *Florida v. Royer*, 460 U.S. 491, 498 (1983)). When determining whether the officers had reasonable suspicion sufficient to support the investigatory stop, the court must consider the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 8 (1989). An individual's presence in a high-crime area, standing alone, is not enough to support a reasonable, articulable suspicion that the individual is involved in criminal activity. *Wardlow*, 528 U.S. at 124. However, an individual's unprovoked flight through a high-crime area in response to the approach of a clearly identifiable police officer may give rise to reasonable suspicion for an investigatory stop. *Id.* at 124–25.

---

[4] Turner did not challenge the seizure under the second prong of *Terry*, which requires the scope of the detention to be carefully tailored to its underlying justification. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Terry*, 392 U.S. at 19. Turner also did not challenge the voluntariness of the statements he gave after being read his *Miranda* rights.

5

When an officer conducts a search or seizure without a warrant, the government bears the burden to prove, by a preponderance of the evidence, that the investigatory stop was constitutional. *United States v. Roch*, 5 F.3d 894, 897 (5th Cir.1993). In this case, under the totality of the circumstances, the Court finds that the Government has failed to meet its burden to prove that the officers had reasonable suspicion to believe Turner had committed or was about to commit a crime.

There are several troubling inconsistencies in the officers' testimony that cast doubt as to what actually occurred and the officers' reasons for pursuing the defendant. For example, the officers' testimony conflicts as to whether it was apparent that Turner was carrying a firearm.[5] The Court has difficulty believing that having noticed what appeared to be a gun, Officer Collins would not alert his partner of the possible danger involved in the stop. Although Officer Collins testified to a number of factors that may lead to reasonable suspicion, Officer Norman's testimony makes it clear that he believed he had reasonable suspicion solely because Turner was walking alongside a closed building in a high-crime area. Turner's presence in a high-crime area is not enough to support a reasonable, articulable suspicion that Turner is involved in criminal activity. *Wardlow*, 528 U.S. at 124.

Additionally, the Court finds that *Wardlow* is distinguishable from the instant case. In *Wardlow*, the defendant's unprovoked flight occurred as a caravan of police vehicles, clearly identifiable as police officers, approached a high-crime area. *Id.* at 121–22. In the instant case, the Court finds that Turner's flight was not "unprovoked," but rather was provoked from the approach of individuals unidentifiable as police officers. The officers were not identifiable as police officers when they approached Turner, at night, in an unmarked vehicle, and began the encounter by yelling, "Hey, come here." *Suppression Hr'g Tr.* 41:3–5, Doc. 35. When a vehicle approaches

---

[5] *See supra* notes 1–3.

someone in a high-crime area, and the occupants yell, "Hey, come here," the Court believes it is reasonable for the person approached to "go about his business" by reversing course and walking a different direction, and even running away from the unknown vehicle. *Royer*, 460 U.S. at 498.

In short, considering the totality of the circumstances, and in light of the credibility of conflicting witness testimony, the Court finds that the Government has failed to prove that the officers had the necessary reasonable suspicion to stop Turner. Thus, the officers violated Turner's Fourth Amendment rights when they seized him without proper reasonable suspicion. Turner's statements to the officers after he was seized were the fruit of an unlawful seizure, and therefore the subsequent statements Turner gave to officers must be suppressed as fruit of the poisonous tree. Accordingly, the defendant's Motion to Suppress is **GRANTED** as it pertains to the statements.

### III.   MOTION TO QUASH (DOC. 19)

Turner argues that the Grand Jury indictment charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) should be quashed because although he was previously convicted of Possession of Marijuana-Second Offense, this underlying offense was legislatively amended from a felony to a misdemeanor in 2015.[6] *Def.'s Mot. Quash* 1–2, Doc. 19.

According to § 922(g)(1), it is a federal crime for any person: (1) who has previously been convicted of a felony, (2) to possess a firearm, (3) which traveled in interstate commerce. *United*

---

[6] Turner makes two additional arguments in support of his Motion to Quash (Doc. 19). First, Turner contends that the 2012 amendment to the Louisiana Constitution, which makes it a fundamental right for Louisiana citizens to possess a firearm and any law burdening that right to be analyzed under a "strict scrutiny standard," allows him to possess a firearm. 2012 La. Const. art. 1, § 11. The defendant did not present any evidence nor did he cite any law in support of his contention that the Louisiana Constitution should effect a federal law. *See* U.S. Const. art. VI, cl. 2 (Supremacy Clause); *McCulloch v. Maryland*, 17 U.S. 316 (1819). Second, the defendant argues that the predicate conviction of Possession of Marijuana-Second Offense was invalid because Turner was never convicted of First Offense Possession of Marijuana. Turner did not present any evidence nor did he cite any law to support this argument either in pre-hearing or post-hearing memoranda, and thus the Court does not have an adequate basis to quash the indictment on this ground.

*States v. Gresham*, 118 F.3d 258, 265 (5th Cir. 1997). In determining what constitutes a felony for purposes of § 922(g)(1), the law of the jurisdiction in which the underlying proceedings were held governs. *United States v. Daugherty*, 264 F.3d 513, 515 (5th Cir. 2001).

Under Louisiana law, "[i]t is well established that the applicable sentencing scheme is the one in effect at the time the offense is committed." *State v. Oliver*, 30 So. 3d 946, 953 (La. Ct. App. 2009) (citing *State v. Sugasti*, 820 So. 2d 518, 520 (La. 2002); *State v. Bellow*, 993 So. 2d 307, 318 (La. Ct. App. 2008)). In Louisiana, "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only." La. Civ. Code art. 6. Additionally, "no section of the [Louisiana] Revised Statutes is retroactive unless it is expressly so stated." La. R.S. 1:2. Furthermore, in *State v. Narcisse*, the Louisiana Supreme Court established that the "mere fact that a statute may be subsequently amended, after the commission of the crime, so as to modify or lessen the possible penalty to be imposed, does not extinguish liability for the offense committed under the former statute." 426 So. 2d 118, 130 (La. 1983).

Turner concedes that at the time he was convicted, in September 2011, Possession of Marijuana-Second Offense was a felony. The statute in question, as amended makes this crime a misdemeanor and currently reads as follows: "(b) Except as provided in Subsection F of this Section, on a second conviction for violation of Subsection C of this Section with regard to marijuana, tetrahydrocannabinol or chemical derivatives thereof, the offender shall be fined not more than one thousand dollars, imprisoned in the parish jail for not more than six months, or both." La. R.S. 40:966(E)(1)(b) (2015). The statute does not expressly contain any provision expressly stating that it is to be retroactive. Also, Turner has not presented any evidence that suggests a legislative intent to apply the current version of the statute retroactively. As such, under

8

the relevant Louisiana law, this statute should be applied prospectively only. Therefore, the 2015 amendment to La. R.S. 40:966(E)(1)(b) has no effect on Turner's 2011 felony conviction.

IV.  **CONCLUSION**

For the foregoing reasons, the defendant's Motion to Suppress (Doc. 18) is **DENIED in part and GRANTED in part**, and the defendant's Motion to Quash (Doc. 19) is **DENIED**.

Signed in Baton Rouge, Louisiana, on March 15, 2016.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**